Filed 1/27/14  In re L.B. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re L.B. et al., Persons Coming Under the Juvenile Court Law. | B249849 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK98334) |
| Plaintiff and Respondent, | |
| v. | |
| D.F. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Stephen Marpet, Judge and Marguerite D. Downing, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant D.F.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant D.B.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

D. F. (mother) and D. B. (father) appeal from the dependency court's order of May 21, 2013, placing parents and L. B. ("L."), D. B. ("D."), and D. B. ("D. B.") (hereinafter, the children) under the supervision of the social worker pursuant to Welfare and Institutions Code[1] section 360, subdivision (b),[2] after sustaining a section 300 petition. They contend substantial evidence does not support the sustained allegations that their drug use creates a risk of harm to the children. We affirm.

### STATEMENT OF FACTS AND PROCEDURE

L., born in 2005, D., born in 2008, and D. B., born in 2012, are the children of mother and father,[3] who had been in a relationship for nine years. The parents abused cocaine. Father belonged to a criminal street gang. He had a history of convictions for possession of marijuana for sale (Health & Saf. Code, § 11359), dangerous weapons (former Pen. Code, § 12020, subd. (a)(1)), attempted murder (Pen. Code, §§ 664, 187, subd. (a)), accessory (Pen. Code, § 32), and carrying a loaded firearm (former Pen. Code, § 12031, subd. (a)(1)). Father's most recent conviction was in 2005. Mother had a history of convictions for loitering (Pen. Code, § 653.22, subd. (a)), grand theft property (Pen. Code, § 487, subd. (a)), marijuana while driving (Veh. Code, § 23222, subd. (b)), unlicensed driver (Veh. Code, § 12500, subd. (a)), and prostitution (Pen. Code, § 647, subd. (b)).

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Section 360, subdivision (b) provides: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301." A disposition order made under section 360, subdivision (b) is an appealable order. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1259-1261.)

[3] Father was found to be the presumed father of the children.

On March 13, 2013, the Los Angeles Sheriff's Department conducted a search of the family residence as part of an investigation to locate firearms used in recent crimes. Father was the target of the search warrant. In the parents' bedroom were found an empty .40 caliber semi-automatic gun magazine and five .45-caliber bullets. Several baggies containing what appeared to be narcotics residue and a small scale were found in the kitchen. The entire family was at home except L., who lived with her cousin during the school week to attend school and returned home on weekends. L. regularly missed school. Four friends of father were found in the residence. Mother did not know who they were. The residence belonged to father's cousin, and the family had been living there since October 2012. Mother admitted she used cocaine at a club two days earlier,[4] when father was at home with the children. She stated she did not use cocaine often. Father admitted the empty magazine belonged to him and that he took a "Molly," which is a derivative of Ecstasy, two days earlier at a party. Methamphetamine is the prime ingredient of Ecstasy. Father was arrested for being an ex-felon in possession of live ammunition.

Parents tested positive on March 14, 2012, for cocaine metabolite. Father did not test positive for methamphetamine.

The children were detained by the Department of Children and Family Services (Department) following the execution of the search warrant, and a section 300 petition was filed. At the detention hearing on March 18, 2013, the children were released to parents.

During an interview for the jurisdiction hearing report, mother denied a history of using drugs and stated she used cocaine on that single occasion only. She denied knowledge father had a criminal history or used drugs. Father denied knowledge mother used drugs. Parents denied knowledge of the baggies with drug residue or the bullets.

---

[4]     Two days earlier was March 11, a weekend day.

3

Father stated he did not know what was in the "Molly" when he took it. He denied a drug abuse history or that he experimented with drugs in the past.

The family moved to another apartment in April 2013. The parents' drug tests in late March and April were negative. The parents enrolled in rehabilitation programs.

On May 21, 2013, the court sustained an amended petition, finding the children were persons described under section 300, subdivision (b), in that: mother and father were current users of cocaine which renders them unable to provide regular care and supervision, and, on March 11, 2013, parents were under the influence of drugs while the children were in their care, which endangered the children; and father has a criminal history of conviction of possession of marijuana for sale, and his illegal drug use endangers the children. The court stated: "the parents appear . . . [to have] minimized their [drug] use. Each of them indicate[s] that it was a one time use. I note that [father] has a conviction for possession of sale of marijuana. I also note that the court's concerns is that the parents' use of narcotics make[s] them susceptible to facts that drugs are not that bad for you, hanging out with the people who use drugs are not that bad, based upon their living environment. [The facts that ammunition was found in the home accessible to the children and father has convictions for weapons offenses are] factors in looking at the totality of this. I also note that there has been some missing of school. I note that the parents have gotten into programming, but the court has a concern that the parents are minimizing their drug use and there are bigger problems going on and that court supervision is warranted."

The court did not declare the children dependents of the court. The court ordered the children to remain released to parents. Pursuant to section 360, subdivision (b), parents and children were placed under the supervision of the Department for six months. Parents were ordered to participate in a drug program with random testing, parenting, and individual counseling.

## DISCUSSION

*Substantial evidence supports the jurisdictional findings.*

Parents contend substantial evidence does not support the finding their drug use placed the children at risk of harm, under section 300, subdivision (b). We disagree with the contention.

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (See *In re Angelia P.* (1981) 28 Cal.3d 908, 924.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) The pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 300, subdivision (b), in pertinent part, describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) The purpose of the juvenile court law is to provide

"maximum safety and protection for children" being harmed or who are at risk of harm. (§ 300.2.) "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (*Ibid*.)

Mother admitted to using cocaine on March 11 and tested positive for cocaine on March 14. Father admitted to ingesting a derivative of Ecstasy, whose main ingredient is methamphetamine, on March 11. His positive test for cocaine on March 14 indicates he ingested cocaine as well. Mother admitted she used cocaine on prior occasions. Subsequently, parents denied prior drug use. However, each parent had a conviction for a drug-related offense, and several baggies containing what appeared to be narcotics residue, along with a small scale, were found in the kitchen of the family's home. As the family had been living in the residence for six months, it is reasonable to infer those items belonged to them. The court did not believe parents' denials of prior drug use and found parents were minimizing their drug use. This is substantial evidence the parents currently abused and had a history of abusing drugs. D. and D. B. lived at home with parents and L. was at home on weekends. March 11 was a weekend day. Thus, the children were in the care of parents on March 11 when parents used cocaine and Ecstasy. This is substantial evidence parents were under the influence when the children were in their care. The risk to children being cared for by a parent under the influence of drugs is not speculative. (See § 300.2; compare *In re Drake M.* (2012) 211 Cal.App.4th 754, 768-769 [no evidence parents' medical use of marijuana under a valid recommendation from a physician created a risk of harm].) Parents were not rehabilitated: they were enrolled in a drug rehabilitation program but had not completed it, and they were in denial of their drug use. It is reasonable to conclude that parents' illegal drug use currently placed the children at risk.

The foregoing is ample substantial evidence supporting the court's findings parents abused drugs and their drug use placed the children at substantial risk of harm.

6

## DISPOSITION

The judgment and orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                              KLEIN, P. J.


We concur:


CROSKEY, J.


ALDRICH, J.